UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA     :
                             :
                             :    Case No. 24-cr-464(APM)
                             :
ANTHONY GUADALUPE OLGUIN     :
         Defendant.          :

**GOVERNMENT'S SUBMISSION OF ELEMENTS OF OFFENSE AND
PROFFER OF EVIDENCE IN SUPPORT OF DEFENDANT'S PLEA OF GUILTY**

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits the following Elements of Offense and Proffer of Evidence in Support of Defendant's Plea of Guilty to Count One of the Indictment in the above-captioned matter.

### *Elements of the Offense*

The essential elements of the offense conspiracy to distribute and possess with intent to distribute four hundred grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iv), and 846, each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

(1)  That an agreement existed between two or more persons to commit the crimes of distribution and possession with the intent to distribute a controlled substance, that is, a mixture and substance containing a detectable amount of fentanyl;

(2)  That the Defendant intentionally joined in that illegal agreement.

(3)  That the Defendant mixture and substance was 400 grams or more of fentanyl.

The offense of violating § 846, by conspiring to violate federal narcotics laws, does not include as an element, the commission of an overt act in furtherance of the conspiracy. *United States v. Pumphrey*, 831 F.2d 307, 308–309 (D.C. Cir. 1987).

1

The essential elements of the offense of distribution of a controlled substance are:

(1) That the Defendant distributed a controlled substance. Distribute means to transfer or attempt to transfer to another person. The government need not prove that the Defendant received or expected to receive anything of value in return;

(2) That the Defendant distributed the controlled substance knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently; and

(3) That the controlled substances were a mixture and substance containing four hundred grams or more of a detectable amount of fentanyl.

The essential elements of the offense of possession with intent to distribute a mixture and substance containing a detectable amount of fentanyl are:

(1) That the Defendant possessed a controlled substance;

(2) That the Defendant did so knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently;

(3) That when the Defendant possessed the controlled substance he had the specific intent to distribute it. Distribute means to transfer or attempt to transfer to another person; and

(4) That the controlled substance was a mixture and substance containing four hundred grams or more of a detectable amount of fentanyl.

### *Penalties for the Offense*

The penalty for conspiring to commit a narcotics offense, in violation of 21 U.S.C. Section 846, is the same as that prescribed for the substantive offense, "the commission of which was the object of the . . . conspiracy." In this case, the penalty is the same as for a violation of 21 U.S.C. Section 841(a)(1), as set forth in 21 U.S.C. Section 841(b)(1)(A)(iv), distribution or possession with intent to distribute fentanyl. The maximum penalty, therefore, is:

(A) a term of imprisonment, which may not be less than ten years and up to life imprisonment;

(B) a fine not to exceed $5,000,000;

(C) a term of supervised release of at least five years, after any period of imprisonment;

(D) a special assessment of $100.

The United States Sentencing Guideline §5E1.2 permits the Court to impose an additional fine to pay the costs of for imprisonment and any term of supervised release and/or probation.

### *Proffer of Evidence*

Had this case gone to trial, the Government's evidence would prove the following beyond a reasonable doubt that:

The Defendant, Anthony Olguin, was an upstream supplier of counterfeit oxycodone fentanyl pills to Zachariah McNichols, who in turn, was one of several suppliers who supplied pills to Andrew Rodriguez, one of five co-defendants in related case 24-cr-80. These defendants perpetuated a large-scale, California-based, fentanyl distribution conspiracy that obtained tens of thousands of fentanyl pills in California and then distributed the fentanyl pills throughout the United States to include the Washington, D.C. area.

Beginning in the summer of 2023, a DEA confidential source (CS) provided information about drug trafficking activities, including that Rodriguez was trafficking fentanyl pills from California. Under DEA supervision, the CS contacted Rodriguez through Rodriguez's Instagram account and was able to discuss the purchase of fentanyl pills. Rodriguez and the CS later exchanged their cellular telephone numbers and began communicating via WhatsApp and text messaging. In messages, Rodriguez explained to the CS that the fentanyl pills would be shipped through the mail at an address of the CS's choosing. Rodriguez said when the CS ordered the pills, he would take payment by various cash apps to include Zelle, CashApp, Western Union and

bitcoin. Rodriguez informed the CS that he would immediately provide the CS with a tracking number for the parcel after the order is confirmed and Rodriguez received at least half of the money.

Between August 2023 and January 2024, the DEA, with the assistance of the CS, conducted four controlled fentanyl pill purchases from Rodriguez, who shipped fentanyl pills from California through the USPS to an undercover mailing address located in Washington, D.C. During the aforementioned controlled purchases, Rodriguez sent a total of approximately 4,713 fentanyl pills (weighing over 400 grams in total). Further investigation revealed the relationship between the Defendant and McNichols and established the Defendant's role as McNichols' supplier

Before their arrests, the Defendant and McNichols lived on the same street in El Monte, California. McNichols operated a food truck out of his home called "Zachibachi," and the Defendant would occasionally purchase food from McNichols. During his custodial interview on September 26, 2024, the Defendant admitted selling drugs, saying that he began in 2020, during the pandemic. The Defendant described knowing McNichols, saying he lived two or three doors down from him, and that he would occasionally buy food from McNichols' food truck. The Defendant admitted to dealing 10,000 to 20,000 fentanyl pills to McNichols "every week or every other week" from April 2023 to August 2023, when a state search warrant was executed on the Defendant's home.

Text messages between the Defendant and McNichols showed their communications about various fentanyl pill transactions. The Defendant's phone number (626-632-9040) was saved as "Blueberry Boy" in McNichols's phone. "Blueberry" is a common street name for counterfeit oxycodone pills containing fentanyl. On July 18th, 2023, McNichols purchased 10,000 fentanyl pills from the Defendant. The Defendant texted McNichols, "Here in Monte eating I had to stop here to eat and then take that 10 back to my la spot but food thing u need it lol." McNichols

responded, "Yeah haha I'll take it bro... I'll let you know when I get to the house over there and we can meet in my backyard." The Defendant then texted, "Fosho I will be here waiting and fosho bro." McNichols later replied, "I'm here bro...Meet me in the back," and the Defendant replied "Fosho bro going."

On July 25, 2023, McNichols asked the Defendant, "You get more bro?" and the Defendant responded, "Still waiting bro they lagging to cross over I told them I need them already." The following day McNichols again asked "You got any pops?" and the Defendant responded, "They coming this way pa I should them later tonight already." McNichols then stated, "Sheesh fasho I need 30," (referencing 30,000 fentanyl pills) and the Defendant replied, "Fosho pa i will hit you up once they get my hands tonight and my bad for the lag and ever one Been hitting me up but just been waiting."

Earlier the next morning, the Defendant told McNichols "I got them pa my bad I got them in my hands around 2am bro lmk if u still need them" and McNichols confirms "Bet bro I'll be in El Monte in a couple hours... I'll lyk when I'm there." The Defendant replied "Fosho bro." Later that day at 1:06pm, the Defendant wrote to McNichols, "Ay pa am be busy doing some things but my boy helping me is around rn Monte he can frop off to you." McNichols responded, "It's good bro, can we meet around 6pm?" The Defendant wrote back "Yes perfect I will be there at that ti...Time". McNichols confirmed "Perfect bro we'll meet up later."

At 2:59pm on August 3, 2023, Rodriguez asked McNichols, "Those 💙 on the floor?," (with the blue heart emoji referencing to blue fentanyl pills). McNichols responded, "Always brotha." Rodriguez then responded, "Ima need 9-10 boats...That possible...??" (a reference to 9,000-10,000 fentanyl pills). McNichols then responded, "Yeah I might only have like 4-5 b's left from this yacht but just hit me to confirm you need that fasho. My neighbor has them so I literally gotta walk across the street just to reup. It's not biggy... No*". The conversation

continued with a discussion about the pricing for 9,000 fentanyl pills with McNichols stating, "Best I can do for you pops is 3600 smooth?," (a reference to $3,600 for 9,000 fentanyl pills).

At 7:20pm on August 3, 2023 McNichols asked the Defendant for another 10,000 pills texting, "Yo pa…Can you bring me another 10 ?" and the Defendant responded, "Fosho I got u I will take it when I go get the food." McNichols replied "Perfect thank you." Toll data and text messages indicate McNichols and the Defendant were in communication regarding this 10,000-fentanyl pill transaction, around the same time McNichols was also in communication with Rodriguez regarding a 9,000 fentanyl pill deal. Later that evening McNichols took a video on his phone of suspected fentanyl pills.



As described, it is clear that after receiving a request from Rodriguez for 9,000 pills, McNichols consummated a 10,000-pill deal with the Defendant. During this time period, the CS communicated with co-defendant Rodriguez via text message, and co-defendant Rodriguez agreed

to send the CS 350 fentanyl pills for the price of $1,000. On August 14, 2023, the DEA received 347 fentanyl pills in Washington, D.C. that were sent by co-defendant Rodriguez. The fentanyl pills were analyzed at the DEA Mid-Atlantic Research Laboratory and determined to be fentanyl with a total weight of approximately 37.42 grams.

Based on the three transactions described in the text messages, the Defendant is responsible for 50,000 fentanyl pills that he sold to McNichols, with an estimated weight of approximately 5 kilograms.

### *Limited Nature of Proffer*

This proffer of evidence is not intended to constitute a complete statement of all facts known by the government, but rather is a statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for defendant's plea of guilty to the charged offenses.

The Defendant further agrees that he personally has read all of the allegations in the indictment in Case No. 24-cr-464 (APM), and the discovery provided by the government. The Defendant admits that the allegations in the indictment and information provided in the discovery are true, or does not have information to dispute or disprove those allegations set forth in the

indictment and the information provided in discovery in any way.

        Respectfully submitted,

        Edward J. Martin, Jr.
        Acting United States Attorney
        D.C. Bar No. 481866

By: _____/s/_____
        Anthony Scarpelli
        Assistant United States Attorney
        D.C. Bar Number 474711
        601 D Street NW
        Washington, D.C. 20530
        Anthony.scarpelli@usdoj.gov
        (202) 252-7707

        Daniel Seidel
        Assistant United States Attorney
        CO Bar Number 41521
        601 D Street NW
        Washington, D.C. 20530
        Daniel.Seidel@usdoj.gov
        (202) 252-7619

### Defendant's Acceptance

I have read each of the pages that constitute the government's proffer of evidence and have discussed it with my attorney, Eduardo Balarezo. I fully understand this proffer and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in my plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this proffer and my plea agreement and matters related to it.

Date: 8/25/25

Anthony Olguin
Defendant

### Attorney's Acknowledgment

I have read each of the pages that constitute the government's Proffer of Evidence, reviewed them with my client, Anthony Olguin, and discussed the provisions of the proffer with him fully. These pages accurately and completely set forth the government's proof, as I understand it.

Date: 8/25/25

Eduardo Balarezo, Esquire
Attorney for Defendant